**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SSN HOTEL MANAGEMENT, LLC | : |
| | : |
| AND | : |
| | : |
| SSN VOORHEES, LLC D/B/A HOLIDAY | : |
| INN EXPRESS | :     CIVIL ACTION NO. |
| | : |
| AND | : |
| | : |
| SSN WEST ATLANTIC CITY, LLC | : |
| D/B/A COMFORT INN WEST ATLANTIC | : |
| INN | : |
| | : |
| AND | : |
| | : |
| SAHAJ ANAND REHOBOTH | : |
| HOSPITALITY, LLC D/B/A AMERICAN | : |
| INN | : |
| | : |
| AND | : |
| | : |
| SHREE SWAMI NARAYAN, LLC D/B/A | : |
| RED ROOF INN AND SUITES | : |
| | : |
| AND | : |
| | : |
| SSN ABSECON, LLC D/B/A DAYS INN | : |
| ABSECON | : |
| | : |
| AND | : |
| | : |
| SSN HERSHEY, LLC D/B/A INN AT | : |
| CHOCOLATE AVENUE | : |
| | : |
| AND | : |
| | : |
| SSN WILLIAMSPORT, LLC D/B/A RED | : |

ROOF INN WILLIAMSPORT                                  :
                                                       :
          AND                                          :
                                                       :
AKSHAR HOSPITALITY, LLC D/B/A                          :
HAMPTON INN-SWEDESBORO                                 :
                                                       :
          AND                                          :
                                                       :
GHANSHYAM HOSPITALITY, LLC                             :
D/B/A HAMPTON INN LINDEN                                :
                                                       :
          AND                                          :
                                                       :
NILKANTH HOSPITALITY, LLC D/B/A                        :
HOME2 HILTON KOP                                       :
                                                       :
          AND                                          :
                                                       :
SAHAJ HOSPITALITY LLC D/B/A                            :
RESIDENCE INN COLLEGEVILLE                             :
                                                       :
          AND                                          :
                                                       :
SHREE HOSPITALITY, LLC D/B/A                           :
HAMPTON INN                                            :
                                                       :
          AND                                          :
                                                       :
SHRIJI HOSPITALITY, LLC D/B/A                          :
FAIRFIELD INN & SUITES                                 :
                                                       :
          AND                                          :
                                                       :
SSN CHRISTIANA, LLC D/B/A FOUR                         :
POINTS BY SHERATON                                     :
                                                       :
          AND                                          :
                                                       :
SSN EGG HARBOR, LLC  D/B/A DAYS                        :

| | |
|---|---|
| HOTEL EGG HARBOR TWP | : |
| | : |
| AND | : |
| | : |
| SSN EWING, LLC D/B/A ELEMENT | : |
| | : |
| AND | : |
| | : |
| SSN FORT BELVOIR, LLC D/B/A HAMPTON INN & SUITES | : : |
| | : |
| AND | : |
| | : |
| SSN NEWARK AIRPORT, LLC D/B/A HOME2 NEWARK AIRPORT | : : |
| | : |
| AND | : |
| | : |
| SSN RUCHI HOTEL LAND DEVELOPMENT, LLC D/B/A SPRING HILL SUITES | : : : |
| | : |
| AND | : |
| | : |
| SSN RUCHI SWEDESBORO, LLC D/B/A TOWNEPLACE SUITES SWEDESBORO | : : |
| | : |
| AND | : |
| | : |
| SSN RUCHI NEWARK, LLC D/B/A CANDLEWOOD SUITES | : : |
| | : |
| PLAINTIFF, | : |
| | : |
| V. | : |
| | : |
| THE HARFORD MUTUAL INSURANCE COMPANY | : : |
| | : |
| DEFENDANT. | : |

COMPLAINT

JURY TRIAL DEMANDED

Plaintiffs, SSN Hotel Management, LLC; SSN Voorhees, LLC d/b/a Holiday Inn Express, LLC; SSN West Atlantic City, LLC d/b/a Comfort Inn West Atlantic Inn; Sahaj Anand Rehoboth Hospitality, LLC d/b/a American Inn; Shree Swami Narayan, LLC d/b/a Red Roof Inn and Suites; SSN Absecon, LLC d/b/a Days Inn Absecon; SSN Hershey, LLC d/b/a Inn Chocolate Avenue; SSN Williamsport, LLC d/b/a Red Roof Inn Williamsport; Akshar Hospitality, LLC d/b/a Hampton Inn-Swedesboro; Ghanshyam Hospitality, LLC d/b/a Hampton Inn Linden; Nilkanth Hospitality, LLC d/b/a Home2 Hilton Kop; Sahaj Hospitality LLC d/b/a Residence Inn Collegeville; Shree Hospitality, LLC d/b/a Hampton Inn; Shriji Hospitality, LLC d/b/a Fairfield Inn Ewr; SSN Christiana d/b/a Four Points by Sheraton; SSN Egg Harbor, LLC d/b/a Days Hotel Egg Harbor Twp; SSN Ewing, LLC d/b/a Element; SSN Fort Belvoir d/b/a Hampton Inn & Suites; SSN Newark Airport, LLC d/b/a Home2 Newark Airport; SSN Ruchi Hotel Land Development, LLC d/b/a Spring Hill Suites; SSN Ruchi Swedesboro, LLC d/b/a TownePlace Suites Swedesboro; and SSN Ruchi Newark, LLC d/b/a Candlewood Suites, by way of Complaint, bring this action against Defendant, The Harford Mutual Insurance Company, and allege as follows:

## <u>NATURE OF THE CASE</u>

1.     Plaintiffs own and operate SSN Hotel Management, LLC; SSN Voorhees, LLC d/b/a Holiday Inn Express, LLC; SSN West Atlantic City, LLC d/b/a Comfort Inn West Atlantic Inn; Sahaj Anand Rehoboth Hospitality, LLC d/b/a American Inn; Shree Swami Narayan, LLC d/b/a Red Roof Inn and Suites; SSN Absecon, LLC d/b/a Days Inn Absecon; SSN Hershey, LLC d/b/a Inn Chocolate Avenue; SSN Williamsport, LLC d/b/a Red Roof Inn Williamsport; Akshar Hospitality, LLC d/b/a Hampton Inn-Swedesboro; Ghanshyam Hospitality, LLC d/b/a Hampton Inn Linden; Nilkanth Hospitality, LLC d/b/a Home2 Hilton Kop; Sahaj Hospitality LLC d/b/a Residence Inn Collegeville; Shree Hospitality, LLC d/b/a Hampton Inn; Shriji Hospitality, LLC

d/b/a Fairfield Inn Ewr; SSN Christiana d/b/a Four Points by Sheraton; SSN Egg Harbor, LLC d/b/a Days Hotel Egg Harbor Twp; SSN Ewing, LLC d/b/a Element; SSN Fort Belvoir d/b/a Hampton Inn & Suites; SSN Newark Airport, LLC d/b/a Home2 Newark Airport; SSN Ruchi Hotel Land Development, LLC d/b/a Spring Hill Suites; SSN Ruchi Swedesboro, LLC d/b/a TownePlace Suites Swedesboro; and SSN Ruchi Newark, LLC d/b/a Candlewood Suites, a group of hotel properties located in Delaware, New Jersey, Pennsylvania, and Virginia.

2.      To protect the hotels from property damage and the loss of income in the event of a sudden suspension of operations for reasons outside of its control, Plaintiffs purchased commercial multiple peril insurance from Defendant, The Harford Mutual Insurance Company, including property coverage.  Plaintiff's insurance policy is an "all-risk" policy that provides coverage for all non-excluded business losses.  A copy of the policy is attached as Exhibit 1.

3.      The policy expressly includes "Business Income" coverage which promises to pay for loss due to the necessary suspension of operations following loss to property and "Civil Authority" coverage which promises to pay for losses caused by a civil or governmental authority that prohibits access to the Covered Properties.

4.      The policy also provides "Extra Expense" coverage which promises to pay for expenses incurred to minimize losses during the suspension of business operations.

5.      On or about March 15, 2020, Plaintiffs were forced to suspend and/or reduce business operations at their Pennsylvania hotels following an order from Pennsylvania Governor Tom Wolf mandating the closure of all non-life sustaining businesses in the Commonwealth in an effort to protect the public from the global pandemic caused by COVID-19, a highly contagious respiratory virus that has upended daily life, infected more than 15,000,000 individuals throughout the United States, and caused the death of over 280,000 individuals throughout the United States.

6.      On or about March 21, 2020, Plaintiffs were forced to suspend or reduce business operations at their New Jersey hotels following an order from New Jersey Governor Phil Murphy mandating the closure of all non-life sustaining businesses in the state in an effort to protect the public from the global pandemic caused by COVID-19, a highly contagious respiratory virus that has upended daily life, infected more than 15,000,000 people throughout the United States, and caused the death of over 280,000 individuals throughout the United States.

7.      On or about March 24, 2020, Plaintiffs were forced to suspend or reduce business operations at their Delaware hotels following an order from Delaware Governor John Carney mandating the closure of all non-life sustaining businesses in the state in an effort to protect the public from the global pandemic caused by COVID-19, a highly contagious respiratory virus that has upended daily life, infected more than 15,000,000 people throughout the United States, and caused the deaths of over 280,000 individuals throughout the United States.

8.      On or about March 30, 2020, Plaintiffs were forced to suspend or reduce business operations at their Virginia hotels following an order from Virginia Governor Ralph Northam mandating the closure of all non-life sustaining businesses in the state in an effort to protect the public from the global pandemic caused by COVID-19, a highly contagious respiratory virus that has upended daily life, infected more than 15,000,000 people throughout the United States, and caused the deaths of over 280,000 individuals throughout the United States.

9.      Having faithfully paid the policy premiums, Plaintiffs made a claim for business interruption, civil authority and/or extra expense coverage to recoup substantial, ongoing financial losses directly attributed to a series of COVID-19 closure orders.

10.     By letter dated May 29, 2020, Defendant wrongfully denied Plaintiffs' claim.  The subject letter is attached at Exhibit 2.

11.     Through this action, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §2201 that the subject policy covers Plaintiffs' financial losses due to the physical loss or damage it has sustained, the limitations, restrictions and/or suspensions of its operations and state and/or local orders mandating the closure of or otherwise prohibiting access to its business during the COVID-19 pandemic.  Plaintiffs further seek damages for breach of contract on the basis that Defendant's denial of coverage runs afoul of the plain language of the policy and/or the public policy of the Commonwealths of Pennsylvania and Virginia, and the states of New Jersey and Delaware.

## THE PARTIES

12.     Plaintiff, SSN Hotel Management, LLC, is a corporation organized and existing under the laws of Delaware with a physical address and/or principal place of business at 5159-5161 W Woodmill Drive, Suite 15, Wilmington, Delaware 19808.

13.     Plaintiff, SSN Voorhees, LLC d/b/a Holiday Inn Express, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 121 Laurel Oak Rd, Voorhees, New Jersey 08043.

14.     Plaintiff, SSN West Atlantic City, LLC d/b/a Comfort Inn West Atlantic Inn, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 7079 E Black Horse Pike, Pleasantville, New Jersey 08232.

15.     Plaintiff, Sahaj Anand Rehoboth Hospitality, LLC d/b/a American Inn, is a corporation organized and existing under the laws of Delaware with a physical address and/or principal place of business at 36012 Airport Road, Rehoboth Beach Delaware 19971.

16.     Plaintiff, Shree Swami Narayan, LLC d/b/a Red Roof Inn and Suites is a

corporation organized and existing under the laws of Delaware with a physical address and/or

principal place of business at 1119 South College Avenue, Newark, Delaware 19713.

17.    Plaintiff, SSN Absecon, LLC d/b/a Days Inn Absecon, is a corporation organized

and existing under the laws of New Jersey with a physical address and/or principal place of

business at 405 E. Absecon Blvd., Absecon, New Jersey 08201.

18.    Plaintiff, SSN Hershey, LLC d/b/a Inn Chocolate Avenue, is a corporation

organized and existing under the laws of Pennsylvania with a physical address and/or principal

place of business at Rt 422 & 1 Sipe Avenue, Hershey, Pennsylvania 17033.[1]

19.    Plaintiff, SSN Williamsport, LLC d/b/a Red Roof Inn Williamsport, is a

corporation organized and existing under the laws of Pennsylvania with a physical address

and/or principal place of business at 234 Montgomery Pike US Highway 15, Williamsport,

Pennsylvania 17702.

20.    Plaintiff, Akshar Hospitality, LLC d/b/a Hampton Inn-Swedesboro, is a

corporation organized and existing under the laws of New Jersey with a physical address and/or

principal place of business at 2 Pureland Drive, Swedesboro, New Jersey 08085.

21.    Plaintiff, Ghanshyam Hospitality, LLC d/b/a Hampton Inn Linden, is a

corporation organized and existing under the laws of New Jersey with a physical address and/or

principal place of business at 501 W. Edgar Road, Linden, New Jersey 07036.

22.    Plaintiff, Nilkanth Hospitality, LLC d/b/a Home2 Hilton Kop, is a corporation

organized and existing under the laws of Pennsylvania with a physical address and/or principal

place of business at 550 Dekalb Pike, King of Prussia, Pennsylvania 19406.

---

[1] SSN Hershey, LLC d/b/a Inn Chocolate Avenue hotel property is only a named insured under the 2020 policy, attached as Exhibit 3.

23.     Plaintiff, Sahaj Hospitality LLC, d/b/a Residence Inn Collegeville, is a corporation organized and existing under the laws of Pennsylvania with a physical address and/or principal place of business at 500 Campus Drive, Collegeville, Pennsylvania 19426.

24.     Plaintiff, Shree Hospitality, LLC d/b/a Hampton Inn, is a corporation organized and existing under the laws of Pennsylvania with a physical address and/or principal place of business at 1582 Bee Line Highway, DuBois, Pennsylvania 15801.[2]

25.     Plaintiff, Shriji Hospitality, LLC d/b/a Fairfield Inn Ewr, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 618 Routes 1 & 9 South, Newark, New Jersey 07114.

26.     Plaintiff, SSN Christiana d/b/a Four Points by Sheraton, is a corporation organized and existing under the laws of Delaware with a physical address and/or principal place of business at 56 S. Old Baltimore Pike, Newark, Delaware 19702.[3]

27.     Plaintiff, SSN Egg Harbor, LLC d/b/a Days Hotel Egg Harbor Twp, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 6708 Tilton Road, Egg Harbor Township New Jersey 08234.

28.     Plaintiff, SSN Ewing, LLC d/b/a Element, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 1000 Sam Weinroth Road, Ewing Township, New Jersey 08628.

---

[2] Shree Hospitality, LLC d/b/a Hampton Inn hotel property is only a named insured under the 2019 policy, attached as Exhibit 1
[3] SSN Christiana d/b/a Four Points by Sheraton hotel property is only a named insured under the 2020 policy, attached as Exhibit 3.

29.     Plaintiff, SSN Fort Belvoir d/b/a Hampton Inn & Suites, is a corporation organized and existing under the laws of Virginia with a physical address and/or principal place of business at 8843 Richmond Highway, Alexandria, Virginia 22309.[4]

30.     Plaintiff, SSN Newark Airport, LLC d/b/a Home2 Newark Airport, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 620 US Highway 1 & 9 South, Newark, New Jersey.

31.     Plaintiff, SSN Ruchi Hotel Land Development, LLC d/b/a Spring Hill Suites, is a corporation organized and existing under the laws of Pennsylvania with a physical address and/or principal place of business at 875 Mancill Mill Road, King of Prussia, Pennsylvania 19406.

32.     Plaintiff, SSN Ruchi Swedesboro, LLC d/b/a TownePlace Suites Swedesboro, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 3 Pureland Drive, Swedesboro, New Jersey 08085.

33.     Plaintiff, SSN Ruchi Newark, LLC d/b/a Candlewood Suites, is a corporation organized and existing under the laws of New Jersey with a physical address and/or principal place of business at 1101 S College Avenue, Newark, Delaware 19713.

34.     At all relevant times, Defendant, The Harford Mutual Insurance Company, a Maryland corporation, maintained a principal place of business at 200 N. Main Street, Bel Air Maryland 21014.

## **JURISDICTION**

---

[4] SSN Fort Belvoir d/b/a Hampton Inn & Suites hotel property is only a named insured under the 2020 policy, attached as Exhibit 3.

35.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because a complete diversity of citizenship exists between Plaintiffs and Defendant and the amount in controversy is greater than $75,000.

36.     Plaintiffs are citizens of Delaware, New Jersey, Pennsylvania, and Virginia.

37.     Defendant is a citizen of Maryland.

38.     This Court has personal jurisdiction over Defendant because at all relevant times, Defendant engaged in substantial business activities in and derived substantial revenue from business activities within the Commonwealth of Pennsylvania, including soliciting, transacting and conducting insurance business (including the subject policy) and administering claims within the Commonwealth.  Defendant has purposely availed themselves of the privilege of conducting business in this forum by maintaining continuous and systematic contacts with this forum.

39.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the acts which gave rise to this lawsuit occurred in this District.  Venue is also proper pursuant to 28 U.S.C. §1391(b)(3) because Defendant is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### A)  PLAINTIFF'S INSURANCE COVERAGE

40.     On or about May 1, 2019, Defendant entered into a contract of insurance with the Plaintiffs, whereby Plaintiffs agreed to make payments to Defendant in exchange for Defendant's promise to indemnify the Plaintiffs for losses, including, but not limited to, business income losses at their locations in Delaware, New Jersey, Pennsylvania, and Virginia (the "Covered Properties"), which are owned, managed, and/or controlled by the Plaintiffs.  *See* Exhibit 1.

41.     On or about May 1, 2020, Defendant entered into a contract of insurance with the Plaintiffs, whereby Plaintiffs agreed to make payments to Defendant in exchange for Defendants' promise to indemnify the Plaintiffs for losses, including, but not limited to, business income losses at their locations in Delaware, New Jersey, Pennsylvania, and Virginia (the "Covered Properties"), which are owned, managed, and/or controlled by the Plaintiffs.  The 2020-2021 Policy has been attached hereto as Exhibit 3.[5]

42.      The Covered Properties are insured under Policy number 9185956, issued by Defendant (hereinafter the "Policy").

43.     Plaintiffs did not participate in the drafting or negotiation of the words used in the Policy.

44.     As the insured, Plaintiffs had no leverage or bargaining power to alter or negotiate the terms of the Policy.

45.     The Policy provides, (among other things), property, business personal property, business income and extra expense, civil authority coverage, and additional coverages.

46.     Plaintiffs faithfully paid the policy premiums and reasonably expected that the business interruption, extra expense, and/or civil authority coverage provided by Defendant would protect against losses in the event of loss or damage to property, including in a pandemic, or that state and/or local officials ordered the closure of its business due to public safety concerns.

47.     Defendant agreed to pay for the actual loss of Business Income "you sustain due to the necessary suspension of your operations…The suspension must be caused by 'direct physical loss of or direct physical damage' to property at premises which are described in the Declarations

---

[5] When Plaintiffs first suffered their loss, the policy attached hereto as Exhibit 1 was in effect as its policy period was May 1, 2019 through May 1, 2020. Attached hereto as Exhibit 3 is the policy that is currently in effect from May 1, 2020 through May 1, 2021. The policy attached as Exhibit 3 was issued by the same Defendant and is the same in all material respects. The two policies will hereinafter be noted as "policy" throughout this Complaint.

and for which a Business Income Limit of Insurance is shown in the Declarations,..." <u>Exh</u>. 1, Section A. 2(b)., Business Income and Extra Expense Coverage Form, (p. 91 of pdf). Covered Cause of Loss means "direct physical loss unless the loss is excluded or limited in this policy." <u>Exhibit</u> 1, Section A, Causes of Loss - Special Form, (p. 106 of pdf).

48.      "Business income" means net income (net profit or net loss) before income taxes that Plaintiff would have earned or incurred. <u>Exh</u>. 1, Business Income (and Extra Expense) Coverage Form Section A.1. a (p. 91 of pdf).

49.      In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to pay necessary and reasonable Extra Expense that Plaintiff incurred due to the necessary interruption of its business operations during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or direct physical damage to the Covered Property. <u>Id</u>.

50.      "Business income" means net income (or loss) before tax that Plaintiff would have earned as well as continuing normal operating expenses incurred. *Id.*

51.      In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to "pay for the actual loss of 'Business Income'" that Plaintiff sustains "and the actual, necessary Extra Expense caused by action of civil authority that prohibits access to the 'described premises' provided that access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage…and the action of civil authority is taken in response to dangerous physical condition… <u>Exh</u>. 1, Business Income (and Extra Expense) Coverage Form, A. 5. a. (p. 92 of pdf).

52.      "Extra expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property. *Id.*

53.     Within the insurance industry and unknown to Plaintiff, the word "loss" and the word "damage" have customary usage more expansive than "loss" and "damage" as used in Defendant's denial letter and includes "contamination".

54.     The words "loss" and/or "damage" are not defined in the policy, are used for different purposes within the policy, and have more than one potential meaning.

55.      "Loss" and/or "damage" are not synonymous.

56.     In this policy "damage" is used with the disjunctive "or" when paired with "loss" and therefore must have a different meaning than "loss".

57.     The words "loss" and "damage" are ambiguous as used by Defendant.

58.      The word "damage" should be interpreted to have its normal and ordinary meaning: physical harm that impairs the value, usefulness or normal function of something.[6]

59.     The COVID-19 virus causes direct physical damage, as well as indirect non-physical damage, as that word is commonly used.

60.     The word "loss" should be interpreted to have its normal and ordinary meaning.

61.     Loss has been defined as follows:

    a.   Loss is the fact of no longer having something or having less of it than before.[7]

    b.   Loss is the disadvantage you suffer when a valuable and useful thing is taken away.[8]

    c.   Decrease in amount, magnitude or degree.[9]

    d.   The amount of an insured's financial detriment by death or damage that the insurer is liable for.[10]

---

[6] https://www.lexico.com/definition/damage
[7] https://www.collinsdictionary.com/us/dictionary/english/loss
[8] https://www.collinsdictionary.com/us/dictionary/english/loss
[9] https://www.merriam-webster.com/dictionary/loss
[10] https://www.merriam-webster.com/dictionary/loss

62.     Loss, as that word is commonly used, need neither be direct nor physical.

63.     The Business Income, Extra Expense and Civil Authority provisions of the Policy were triggered by damage and loss caused by COVID-19, the related closure orders issued by local, state and federal authorities, and Plaintiff's inability to use and/or restricted use of the Covered Property.

**B)  THE COVID-19 PANDEMIC**

64.     On March 11, 2020, the World Health Organization officially declared COVID-19 a global pandemic.

65.     COVID-19 is a cause of real physical loss and damage to Covered Property.

66.     COVID-19 is a physical substance.

67.     COVID-19 remains stable and transmittable in aerosols for up to three hours, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel.[11]

68.     The ability of the deadly virus to physically infect and remain on surfaces of objects or materials, i.e. "fomites," for up to twenty-eight (28) days has prompted health officials in countries like China, Italy, France and Spain to disinfect and fumigate public areas before reopening them.

69.     To avoid the increased risk of contracting the virus in congregate environments, the U.S. Centers for Disease Control and Prevention ("CDC") has advised against gatherings of more than 10 people

70.     As of the date of this filing, every state has enacted measures to mitigate the spread of COVID-19.

**C)  THE COVERED CAUSE OF LOSS**

---

[11] *See e.g.*   https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last accessed May 23, 2020).

1) **Physical Loss**

71.     Plaintiffs suffered direct physical loss of or damage to the Covered Properties.

72.     The direct physical loss of or damage to the Covered Properties was the result of a Covered Cause of Loss.

73.     Losses due to the COVID-19 pandemic are a Covered Cause of Loss under the Policy.

74.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, Insurance Services Office, Inc. ("ISO"), circulated a statement to state insurance regulators that stated as follows:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage.

75.     The COVID-19 pandemic caused direct physical loss of or direct physical damage to the Covered Properties under the Policy.

76.     The risk of COVID-19 entering the Covered Property and contaminating the surfaces is direct physical loss of and damage to the Covered Property.

77.     The COVID-19 pandemic renders the Covered Properties unsafe, uninhabitable, damaged, or otherwise unfit for its intended use, which constitutes direct physical loss.

16

78.    The COVID-19 pandemic caused direct physical loss of or damage to the property within one mile of the Covered Property.

79.    Plaintiff's loss of use of the Covered Property constitutes direct physical loss.

80.    Plaintiff's restriction of use of the Covered Property constitutes direct physical loss.

81.    The "COVID-19 Effect" also produces physical loss of and damage to the property.

82.    Social anxiety over public health and society's change in perception that indoor establishments are unsafe due to COVID-19 creates "physical loss and damage" for purposes of commercial property coverage.

83.    The public's and customers' change in perception is the functional equivalent of damage of a material nature or an alteration in physical composition.

84.    Plaintiff's business income loss coverage within the Policy was triggered.

**2) <u>Civil Authority Orders</u>**

85.    The presence of COVID-19 has prompted civil authorities throughout the country to issue orders mandating the suspension of non-essential businesses across a wide range of industries, including civil authorities with jurisdiction over Plaintiff's business.

86.    On March 6, 2020, Pennsylvania Governor Tom Wolf signed an emergency disaster declaration triggering a public health state of emergency in the Commonwealth due to COVID-19.  *See* the Declaration attached as <u>Exhibit</u> 4.

87.    On March 19, 2020, Governor Wolf issued an Order requiring all non-life sustaining businesses in the Commonwealth to cease operations and close all physical locations until further notice.  Life-sustaining businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control."  *See* the Order attached as <u>Exhibit</u> 5.

88.     On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe and Montgomery Counties. *See* the Order attached as <u>Exhibit</u> 6.

89.     On April 1, 2020, Governor Wolf extended the Stay-at-Home Order to the entire Commonwealth of Pennsylvania. *See* the Order attached as <u>Exhibit</u> 7.

90.     On March 12, 2020, Virginia Governor Ralph S. Northam signed Executive Order 51 declaring a disaster emergency in the State of Virginia due to COVID-19. *See*, the Executive Order attached as <u>Exhibit</u> 8.

91.     On March 23, 2020, Governor Northam signed Executive Order 53 requiring all non-essential businesses to utilize any telecommuting or work from home procedures and to reduce the in-person workforce at any work locations to 10% of the business establishment. See, the Executive Order attached at <u>Exhibit</u> 9.

92.     On March 30, 2020, Governor Northam issued a Stay-at-Home Order for all residents of the Commonwealth of Virginia. *See* the Order attached as <u>Exhibit</u> 10.

93.     On March 9, 2020, New Jersey Governor Phil Murphy issued Executive Order No. 103, declaring a State of Emergency in New Jersey as a result of COVID-19. Order 103 attached as <u>Exhibit</u> 11.

94.     On March 16, 2020, Governor Murphy issued Executive Order No. 104, declaring it "necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions." Order 104 attached as <u>Exhibit</u> 12.

95.     On March 21, 2020, Governor Murphy issued a Stay-at-Home Order for all residents of the State of New Jersey. *See* the Order attached as <u>Exhibit</u> 13.

96.     On March 12, 2020, Delaware Governor John Carney signed an Executive Order declaring a disaster emergency in the State of Delaware due to COVID-19.  *See* the Order attached as Exhibit 14.

97.     On March 16, 2020, Governor Carney issued Executive Order, recommending "halt gatherings of 50 people or more" Order attached as Exhibit 15.

98.     On March 22, 2020, Governor Carney issued a Stay-at-Home Order for all residents of the State of Delaware.  *See* the Order attached as Exhibit 16.

99.     These Orders and proclamations, as they relate to the closure of all "non-essential businesses" evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property.  This is particularly true in places such as Plaintiff's business where the requisite contact and interaction causes a heightened risk of the property becoming contaminated by COVID-19.

100.    Plaintiffs' business income loss was triggered with each restrictive civil authority action and/or publication of a restrictive civil authority order which prohibited or limited access to the Covered Properties.

101.    COVID-19 caused direct physical loss of or damage to property in the area immediately surrounding and within one mile of the Covered Premises.

102.    COVID-19 rendered property within one mile of the Covered Property unsafe, uninhabitable, damaged, and/or otherwise unfit for its intended use.

103.    The Civil Authority Orders were implemented to prevent the spread of COVID-19 by prohibiting and/or limiting people from entering the Covered Property because of (a) actual and immediate risk of loss and damage to the Property and other property in the immediate vicinity;

(b) characteristics of the Covered Property; and (c) the high probability that further contamination and damage would occur if access to the Property was not limited.

104.    Further, Plaintiffs' Covered Properties suffered "direct physical loss or direct physical damage" due to these Governors' orders (and other local governmental orders) mandating that Plaintiffs limit their primary use of the Covered Properties. The Governors' Orders, in and of themselves, constitute a Covered Cause of Loss within the meaning of the Policy.

**D) <u>IMPACT ON PLAINTIFF</u>**

105.    On or about March 15, as a direct result of the COVID-19 pandemic and closure Orders referenced herein, Plaintiff was forced to severely limit and restrict the activities of their Pennsylvania, New Jersey, Delaware and Virginia properties.

106.    Because people - employees, guests, and others - frequent all areas of Plaintiffs' properties, the Covered Properties are contaminated and would continue to be contaminated if the business continued to operate at full capacity.

107.    Because business is conducted in an enclosed building, the Covered Properties are contamination zones and sustained physical loss and damage, as respiratory droplets are more likely to remain in the air or infect surfaces within the Covered Properties for far longer or with significantly increased frequency as compared to facilities with open-air ventilation.

108.    Plaintiffs' business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the employees and the users require them to interact in close proximity to the property and to one another.

109.    The virus is physically impacting the Covered Properties.  Any effort by the Defendant to deny the reality that the virus has caused physical loss and damage would constitute

a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

110.    As a direct result of the COVID-19 pandemic and the Closure Orders, Plaintiffs have incurred, and continue to incur, among other things, direct physical loss of or damage to property, a substantial loss of business income and additional expenses covered under the Policy.

111.    The covered losses incurred by Plaintiffs and owed under the Policy increase daily.

112.    Plaintiffs submitted a claim to Defendant under the Policy due to the presence of COVID-19 and the closure orders described herein.

113.    On May 29, 2020, Defendant wrongfully denied Plaintiff's claim. Exh. 2.

114.    A declaratory judgment that the Policy provides coverage will ensure that Plaintiffs' reasonable expectations of coverage are met and prevent Plaintiffs from being left without vital coverage acquired to ensure the survival of the business.

115.    A declaratory judgment that the Policy provides coverage will also further the public policy of this Commonwealth.

**E)  THE VIRUS EXLUSION**

116.    The Policy contains a coverage exclusion for "loss or damage caused by or resulting from any virus, bacterium or other microorganism" (Form CP 01 40 07 06) (the "Virus Exclusion").

117.    The Virus Exclusion does not preclude coverage for Plaintiff's claim under the Policy.

118.    To the extent that the governmental orders, in and of themselves, constitute direct physical loss of or damage to Plaintiff's Covered Properties, and/or preclusion of access to the

Covered Properties because of a Civil Authority order related to damage to nearby properties, the Virus Exclusion simply does not apply.

119.    Even if it were applicable, the Virus Exclusion does not exclude payment of expenses.  By its very terms, the Virus Exclusion in the policy only applies to "loss or damage" and not expenses.

120.    The Business Income, Civil Authority, and Extra Expense coverage forms specifically refer to recovery under the policy for "expenses" as distinct from loss of income.

121.    Because the Virus Exclusion only excludes coverage for "loss or damage" and does not exclude coverage for "expense", the exclusion does not apply to the expenses incurred and covered under the policy due to the suspension of operations related to both the damage caused by the presence of the virus or the suspension of operations caused by the civil authority orders.

122.    The insurance industry, through the ISO, and including Defendant, understood that the presence of a virus caused damage to property which would trigger coverage under the business income or Civil Authority coverage forms.

123.    Nevertheless, through the ISO, the industry represented to the Insurance Department that there was no coverage for damage caused by viruses under the ISO policies, and therefore, the virus exclusion did not change the policy or reduce coverage. No premium reduction was associated with the addition of the virus exclusion.

124.    Plaintiffs did not negotiate for the inclusion of the Virus Exclusion.

125.    Plaintiffs did not receive any premium reduction for the inclusion of the Virus Exclusion.

126.    Plaintiffs did not receive any benefit or consideration for the inclusion of the Virus Exclusion.

127.    Plaintiffs did not receive the benefit of any bargain related to the Virus Exclusion.

128.    Defendant received the unilateral benefit of excluding coverage for a risk while also receiving the same or even greater premium for the lesser coverage.

129.    A business and/or property owner who was even aware of the virus exclusion would conclude that the exclusion related to liability claims against the insured for transmitting the virus, not property damage claims.

130.    Defendant should be estopped from enforcing the Virus Exclusion, on principles of regulatory estoppel, as well as general public policy.

131.    In 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of the Virus Exclusion.

132.    In their filings with the various state regulators, on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.

133.    Specifically, in its "ISO Circular" dated July 6, 2006 and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

134.    Similarly, AAIS, in its "Filing Memorandum" in support of the Virus Exclusion, represented:

> Property policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . .
>
> This endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is excluded…

135.    The foregoing representations made by the insurance industry were false.

136.    By 2006, the time of the state applications to approve the Virus Exclusion, courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to such property."

137.    Upon information and belief, the insurance department relied on the industry's and Defendant's representation when the department approved the Virus Exclusion for inclusion in standard comprehensive policies without a reduction in premiums to balance a reduction in coverage.

138.    The foregoing assertions by the insurance industry (including Defendant), made to obtain regulatory approval of the Virus Exclusion, were misrepresentations and for this reason, among other public policy concerns, Defendant should now be estopped from enforcing the Virus Exclusion to avoid coverage of claims related to the COVID-19 pandemic.

139.    In securing approval for the adoption of the Virus Exclusion by misrepresenting to the state regulators that the Virus Exclusion would not change the scope of coverage, Defendant

24

effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged.

140.    Defendant's Form Virus Exclusion is essentially the same exclusion as the exclusion promoted by ISO and AAIS.

141.    Under the doctrine of regulatory estoppel, the Court should not permit Defendant to benefit from this type of duplicitous conduct before the state regulators.

142.    Upon information and belief, Defendant has denied, or will deny, all claims for coverage under their "all-risk" property damage policies issued by Defendant.

143.    Defendant's denial of lost business income claims left Plaintiff and similarly situated business without vital coverage acquired to ensure the survival of their business during the suspension of operations.

144.    Meanwhile, Defendant receives the benefit of an exclusion for which Plaintiffs and similarly situated insureds received no bargain, reduction of premiums or any benefit whatsoever

## CAUSES OF ACTION

### COUNT I
### DECLARATORY RELIEF

145.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

146.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

147.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

148.    Plaintiffs request a Declaratory Judgment to affirm that the Policy provides business income coverage because of losses attributable to civil authority actions, and because the denial violates public policy.

149.    Plaintiffs' interest in the Policy and the declaratory relief sought is direct, substantial, quantifiable, and immediate.

150.    An actual controversy has arisen between Plaintiffs and Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy to reimburse Plaintiffs for its business income loss. Plaintiffs contends and, upon information and belief, Defendant disputes and denies that:

    a.   The closure Orders described herein constitute a prohibition of access to the Covered Properties;

    b.   The prohibition of access by the closure Orders described herein has specifically prohibited access as defined in the Policy;

    c.   The closure Orders described herein trigger coverage;

    d.   Plaintiff sustained direct physical loss of or damage to the Covered Properties under the Policy;

    e.   The Policy provides coverage to Plaintiffs for any current and future closures due to physical loss or damage directly or indirectly resulting from COVID-19 under the Civil Authority Coverage;

    f.   The Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Properties;

g.   The Virus Exclusion is void as against public policy as it pertains to the civil authority orders described herein;

h.   The Virus Exclusion does not apply to business income loss or losses from an order of a civil authority; and

i.   Defendants are estopped from enforcing the Virus Exclusion.

151.   Resolution of the duties, responsibilities and obligations of the Parties is necessary as no adequate remedy at law exists and a judicial declaration is required to resolve the dispute and controversy.

## COUNT II
### BREACH OF CONTRACT - COMPENSATORY RELIEF

152.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

153.   At all times relevant hereto, Plaintiffs were an insured under the Policy with Defendant.

154.   Plaintiffs purchased, elected and paid premiums to Defendant for the property, business income and extra expense, civil authority, and additional coverages applicable to the losses claimed in this action.

155.   All the information regarding the insureds' businesses and risks thereof was known to the Defendant when the Policy was issued.

156.   Plaintiffs are entitled to recover all losses caused by COVID-19 and/or civil authority orders.

157.   Defendant was advised of Plaintiffs' claims and demand for coverage under the Policy.

158.   Plaintiffs complied with all requirements of the Policy.

159.     Defendant is duty-bound and obligated to act in good faith towards the insured under the Policy to make fair and reasonable efforts and offers to resolve Plaintiffs' claim.

160.     Defendant breached the terms and provisions of the Policy by denying the claims of Plaintiffs for all losses caused by COVID-19 and the civil authority orders.

161.     The breach of the indemnification obligations under the Policy by Defendant have caused Plaintiffs to suffer loss and harm.

162.     Defendant is required to pay Plaintiffs all covered losses caused by COVID-19 and civil authority orders including business income, extra expense, contamination, civil authority and other coverages under the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment against the Defendant and declare, as a matter of law, the following:

    a.   The civil authority orders prohibit access to Plaintiff's Covered Properties;

    b.   The civil authority orders "prohibit access" as defined in the Policy;

    c.   The civil authority coverage applies to Plaintiff due to physical loss or damage at the insured premises or other premises in the immediate area of the Covered Properties;

    d.   The Plaintiff is entitled to coverage for business income loss caused by the referenced orders;

    e.   Plaintiff sustained direct physical loss of or damage to the Covered Properties under the Policy;

    f.   The inability to use the insured premises amounts to a physical loss or damage as defined in the Policy;

g.  Defendants' denial of coverage for losses caused by the referenced civil authority orders violates public policy;

h.  Defendants' denial of coverage for losses caused by the referenced civil authority orders amounts to a breach of contract;

i.  The Virus Exclusion is void as against public policy as it pertains to the closure orders described herein;

j.  The Virus Exclusion does not apply to business income loss or losses from an order of a civil authority; and

k.  Defendants are estopped from enforcing the Virus Exclusion.

Plaintiffs further seek an Order requiring Defendant to pay Plaintiffs all covered losses caused by loss of access to the Covered Properties including business income, extra expense, contamination, civil authority, and other coverages under the Policy; and such other relief as the Court deems appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 10, 2020                    Respectfully submitted,

**ANAPOL WEISS**

_____
Sol H. Weiss, Esquire
James R. Ronca, Esquire
Gregory S. Spizer, Esquire
Stanford B. Ponson, Esquire
Paola Pearson, Esquire
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
sweiss@anapolweiss.com
jronca@anapolweiss.com
gspizer@anapolweiss.com
sponson@anapolweiss.com
ppearson@anapolweiss.com

Counsel for Plaintiff