**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SSN HOTEL MANAGEMENT, LLC, *et al.*, | : | CIVIL ACTION |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | No. 20-6228 |
| | : | |
| THE HARFORD MUTUAL INS. CO., | : | |
| *Defendant.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                      **APRIL 8, 2021**

Plaintiff SSN Hotel Management, LLC and the hotel properties it operates in Delaware, New Jersey, Pennsylvania, and Virginia have modified their operations because of the COVID-19 pandemic and consequent Shutdown Orders. Plaintiffs suffered business income losses and sought indemnity from the defendant insurance provider Harford Mutual Insurance Company under an all-risk commercial property policy. The defendant denied the hotels' claims.

Plaintiffs brought this action under our diversity jurisdiction for breach of contract and seeking a declaration that its losses are covered. *See* ECF No. 1. Defendant moves to dismiss the amended complaint for failure to state a claim, arguing Plaintiffs' losses are not covered by the terms of its Policy. Plaintiffs oppose the motion. Having considered Defendant's motion to dismiss, Plaintiffs' response in opposition, and Defendant's reply, we will grant Defendant's motion to dismiss Plaintiffs' amended complaint because Plaintiffs' claims are not covered by the terms of their Policy.

## I.    BACKGROUND[1]

---

[1] The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [ ] construe[s] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The Court draws the following facts from the Amended Complaint and the attached exhibits. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule

### A.  The Parties and Policy

Plaintiffs are SSN Hotel Management, LLC and the hotels it operates in Delaware, New Jersey, Pennsylvania, and Virginia ("Plaintiffs" or "SSN"). *See* Am. Compl., ECF No. 10 ¶¶ 12–38. Defendant Harford Mutual Insurance Company is an insurance carrier based in Bel Air, Maryland ("Harford").[2] Am. Compl. ¶ 38. SSN purchased commercial property insurance coverage (the "Policy") from Harford in May 2019. Am. Compl. ¶ 41; *see also* ECF No. 10-1, Ex. 1. Among other provisions, the Policy includes a "Business Income (and Extra Expense) Coverage Form" providing coverage in the event of certain interruptions to their business. ECF No. 10-1, Ex. 1 at 92–93. Relevant here, the Form includes Business Income coverage, Civil Authority coverage, and Extra Expense coverage. *Id.*

The Policy states that Harford covers Business Income losses Plaintiffs sustain "due to the necessary 'suspension' of [their] 'operations' during the 'period of restoration,'" if the suspension was "caused by direct physical loss of or damage to property at [the insured's] premises." *Id.* at 92. The Policy defines the "period of restoration" as the period of time beginning after the direct physical loss or damage to the insured property and ending either "when the premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location." *Id.* at 100. Business Income includes "[n]et income ... and [c]ontinuing normal operating expenses incurred, including payroll." *Id.* at 92. Extra

---

12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

[2] Because the parties are completely diverse—no member of Plaintiff LLCs resides in Maryland—and the amount in controversy exceeds $75,000, we have jurisdiction under 28 U.S.C. § 1332(a). *See* Am. Compl., ECF No. 10 ¶¶ 36–38; Good Faith Statement, ECF No. 8 (stating that no members of Plaintiff LLCs are Maryland residents).

Expense Coverage is provided if the Business Income Coverage applies and the insured incurs necessary expenses during the "period of restoration" that it would not have incurred had there been no direct physical loss or damage to the property. *Id.*

The Civil Authority provision covers loss of Business Income and Extra Expenses resulting from damage to property other the insured's premises when, as a result of "dangerous physical conditions," a civil authority's actions prohibit access to both the insured's premises and the area immediately surrounding the damaged property. *Id*. at 93. The damaged property must be within one mile of the insured's premises. *Id.*

The Policy excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id*. at 102 (the "Virus Exclusion"). The Virus Exclusion applies to "all coverage under all forms and endorsements," including Business Income, Extra Expense, and Civil Authority coverage. *Id*.

### B.  The Shutdown Orders

On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of the emergent situation in the Commonwealth as a result of the spread of COVID-19. Am. Compl. ¶ 93. On March 19, 2020, Governor Wolf issued an order requiring all non-life sustaining businesses in the Commonwealth to cease or modify operations. *Id.* ¶ 94; ECF No. 10-1, Ex. 5. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *Id*. On March 23, 2020, Governor Wolf issued a stay-at-home order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. ECF No. 10-1, Ex. 6. On April 1, 2020, Governor Wolf extended the March 23, 2020 stay-at-home

order to the entire Commonwealth of Pennsylvania. ECF No. 10-1, Ex. 7. Subsequent orders designed to mitigate the spread of the COVID-19 virus followed.

Shutdown orders in Virginia, New Jersey, and Delaware followed similar time tables. On March 12, 2020 Virginia Governor Ralph Northam declared a disaster emergency. ECF No. 10-1, Ex. 8. New Jersey Governor Phil Murphy and Delaware Governor John Carney declared states of emergency on March 9, 2020 and March 12, 2020 respectively. ECF No. 10-1, Exs. 11, 14. Subsequent orders in each state limited the unnecessary movement of individuals and person-to-person interactions. *See* Am. Compl. ¶¶ 98-106. Notably, Governor Wolf's March 19, 2020 Shutdown Order included hotels in a list of life-sustaining businesses that could remain open provided they employed social distancing and other mitigation measures. *See* ECF No. 14-1, Ex. A. at 7. Virginia, New Jersey, and Delaware Shutdown Orders similarly permitted hotels to continue to operate with limitations intended to reduce the spread of COVID-19. *See* ECF No. 14-1, Ex. B at 10; ECF No. 10-1, Ex. 12; ECF No. 14-1, Ex. C at 14.

As a result of these Shutdown Orders, Plaintiffs modified their operations. Am. Compl. ¶¶ 112–114. Plaintiffs submitted a claim for business losses seeking coverage under their Policy. *Id.* ¶ 126. Harford rejected Plaintiffs' business loss and business interruption claims, contending, *inter alia*, that Plaintiffs did not suffer physical damage to their properties and stating other reasons why Plaintiffs were not entitled to coverage for the losses and damages claimed. ECF No. 10-1, Ex. 2 at 231–235.

### C.  Procedural History

On December 10, 2020 Plaintiffs initiated this action for breach of contract and seeking a declaration that they are entitled to coverage under the Policy for business income losses caused by the COVID-19 global pandemic and resulting Shutdown Orders. ECF No. 1. After Harford

moved to dismiss Plaintiffs' complaint (ECF No. 9), Plaintiffs filed an amended complaint. ECF No. 10. On March 18, 2021, Harford moved to dismiss Plaintiffs' amended complaint. *See* ECF No. 14.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) we "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;' " (2) we "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675).

In ruling on a motion to dismiss, we may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013)).

## III.   DISCUSSION

Interpretation of an insurance policy, and specifically whether a particular loss triggers coverage, is a question of law. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co*., 908 A.2d 888, 897 (Pa. 2006). We are to read the policy as a whole and construe its meaning according to its plain language. *Spector v. Fireman's Fund Ins. Co*., 451 F. App'x 130, 136 (3d Cir. 2011). When the policy language is "clear and unambiguous," we must "give effect to that language." *401 Fourth Street v. Inv'rs Ins. Co*., 879 A.2d 166, 170 (Pa. 2005). When policy language is ambiguous, we are to construe the provision against the insurer and in favor of the insured. *Ramara, Inc. v. Westfield Ins. Co*., 814 F.3d 660, 677 (3d Cir. 2016). Policy language is ambiguous where it is reasonably susceptible to more than one construction. *Madison Const. Co. v. Harleysville Mut. Ins. Co*., 735 A.2d 100, 106 (1999). However, the language may not be stretched beyond its plain language meaning to create an ambiguity. *Meyer v. CUNA Mut. Ins. Soc*., 648 F.3d 154, 164 (3d Cir. 2011). Mere disagreement between the parties does not render the policy language ambiguous. *Id*.

### A. Coverage

As the insured, Plaintiffs have the initial burden of establishing coverage under the Policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). Where the insured meets that burden and the insurer relies on a policy exclusion as the basis for denying coverage, the insurer then has the burden of proving that the exclusion applies. *Id*.[3]

---

[3] We have recently considered similar claims under this framework.  *See J.B.'s Variety Inc., d/b/a New Wave Cafe, v. Axis Insurance Company*, No. CV 20-4571, 2021 WL 1174917, at *1 (E.D. Pa. Mar. 29, 2021); *Whiskey Flats Inc. v. Axis Ins. Co.*, No. CV 20-3451, 2021 WL 534471, at *1 (E.D. Pa. Feb. 12, 2021); *Pennsylvania ATCM Optical, Inc. v. Twin City Fire Ins. Co.,* No. CV 20-4238, 2021 WL 131282 (E.D. Pa. Jan. 14, 2021); *Clear Hearing Sols., LLC v. Cont'l Cas. Co*., No. CV 20-3454, 2021 WL 131283 (E.D. Pa. Jan. 14, 2021); *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London*, No. CV 20-2365, 2021 WL 131339 (E.D. Pa. Jan. 14, 2021); *TAQ Willow Grove, LLC v. Twin City Fire Ins*., No. CV 20-3863, 2021 WL 131555 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co*., No. CV 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021); *Zagafen Bala, LLC v. Twin City*

### 1. Business Income Coverage

Under the Policy, Plaintiffs can obtain Business Income and Extra Expense coverage only if they must suspend operations during a period of restoration as a result of "direct physical loss of or damage to" their premises. ECF No. 10-1, Ex. 1 at 92–93. No party disputes that Plaintiffs suspended or reduced their operations as a result of the Shutdown Orders. At issue is only whether physical loss or damage to the premises caused those suspensions or reductions.

Plaintiffs argue the amended complaint's allegations that the insured premises have suffered "direct physical loss or damage" to property, *see* Am. Compl. ¶¶ 63, 69, 75-78, 80-81, 85-89, 109, 112, state a claim sufficient to survive a motion to dismiss. *See* Pls. Br. in Opp., ECF No. 15-1 at 14. However, this misstates the pleading standard. While it is true that Rule 8(a)(2) does not require the heightened pleading of specific facts, it does require pleadings to contain enough facts to state a claim for relief that is plausible. *Twombly*, 550 U.S. at 570. What constitutes direct physical loss or damage under the Policy is a legal question. *See Kvaerner Metals Div.* 908 A.2d at 897. Thus, we may disregard Plaintiffs' conclusory statements—unsupported by facts— that their premises have suffered direct physical loss or damage.

Plaintiffs also argue that "loss," which is not defined in the Policy, reasonably means "loss of use," which Plaintiffs argue they have suffered here. *See* ECF No. 15-1at 18. However, while we agree that "loss" of the premises can mean the loss of use, that loss of use must be tied to a physical condition actually impacting the property, which is not satisfied here. *See Port Auth. of N.Y. & N.J. v. Affiliated MF Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (finding that asbestos contamination, without contamination of the property to such a degree that "its function is nearly

---

*Fire Ins. Co.*, No. CV 20-3033, 2021 WL 131657 (E.D. Pa. Jan. 14, 2021); *Moody v. Hartford Fin. Grp., Inc.*, No. CV 20-2856, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021).

eliminated or destroyed, or the structure is made useless or uninhabitable," was not sufficient for loss of use to constitute physical loss or damage).

Plaintiffs have not suffered a reduced use—much less a loss of use—because their premises suffered physical damage or because of the presence of a foreign substance on the premises. *See* ECF No. 15-1 at 20. The properties' susceptibility to contamination—because employees, customers, and the public frequent all areas of the "enclosed building[s],"Am. Compl.  ¶¶ 117–118—is not a condition that can trigger coverage under a reasonable reading of the Policy. *See Brian Handel D.M.D. v. Allstate Ins. Co*., No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) (finding no "direct physical loss of or damage to" property where the property remained inhabitable and usable, albeit in limited ways). The alleged conditions have not "operate[d] to completely or near completely preclude operation of the premises as intended." *4431, Inc. et al v. Cincinnati Ins. Cos.*, No. 5:20-cv-04396, 2020 WL 7075318, at *10 (E.D. Pa. Dec. 3, 2020). Plaintiffs' premises remained open for employees, customers, and the public, albeit while employing social distancing practices and other mitigation measures. Thus, their properties remained inhabitable and usable, albeit in limited ways.

Further, reading "direct physical loss of or damage to property" to contemplate mere loss of use is not a sound interpretation of the Policy because it does not make sense reading the contract as a whole. *See Colorcon, Inc. v. Le*wis, 792 F. Supp. 2d 786, 797 (E.D. Pa. 2011) (courts must read the contract "as a whole ... it being necessary to consider every part thereof in order to resolve the meaning of a particular part as well as that of the whole") (internal citation and quotation omitted). Crucially, the Policy only pays Business Income coverage and Extra Expense coverage during a "period of restoration." The Policy measures that period from after the direct physical loss or damage—72 hours for Business Income coverage; immediately for Extra Expense

coverage—until the "date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when "business is resumed at a new permanent location." ECF No. 10-1, Ex. 1 at 100. Similarly, the Policy includes special exclusions for the Business Income coverage that apply to an "increase of loss caused by or resulting from [a d]elay in rebuilding, repairing, or replacing the property due or resuming 'operations' due to interference at the location by strikers or other persons." *Id*. at 111.

When reading the contract in its entirety, these provisions are not ambiguous. The Policy makes clear that there must be some sort of physical damage to the property that is the subject of a repair, rebuilding, or replacing. The effects of the COVID-19 pandemic on Plaintiffs do not fall within that definition, as the presence or threatened presence of the coronavirus on the property can be largely remediated by mask wearing, social distancing, and disinfecting surfaces. The loss of use is caused by the Shutdown Orders and not by any physical condition, damage, or contamination of the insured premises. The parties' agreement to provide Business Income coverage only during a "period of restoration" and to measure that period of restoration against the time it takes to repair the premises indicates that they intended the Policy to cover losses for physical damage, and that intent controls our interpretation of the Policy. Accordingly, Plaintiffs have not met their burden of establishing coverage under the Business Income and Extra Expense coverage.

### 2.  Civil Authority Coverage

The Policy's Civil Authority coverage applies only if there is "damage to property other than property at the described premises" and a civil authority prohibits access to the area immediately around the covered premises in response to dangerous physical conditions in the area. ECF No. 10-1, Ex. 1 at 93. First, Plaintiffs' premises were not required to close by any Shutdown

Order in Pennsylvania, New Jersey, Delaware, or Virginia. Second, the Shutdown did not require Plaintiffs to limit their operations because of damage to a nearby property or because there was some dangerous physical condition at another nearby property. The Shutdown Orders were issued to address the health crisis, not some "direct physical loss." *See, e.g.*, "Proclamation of Disaster Emergency," Governor Wolf, Commonwealth of Pennsylvania (March 6, 2020), ECF No. 10-1, Ex. 4 (stating that it is critical "to implement measures to mitigate the spread of COVID-19"). Thus, Plaintiffs' losses fall outside the scope of the Civil Authority coverage.

### B. The Virus Exclusion

Even if Plaintiffs' claimed losses fell within the grant of coverage under the Business Income, Extra Expense, or Civil Authority provisions, the Virus Exclusion still bars recovery. The Virus Exclusion applies to "loss or damage caused by or resulting from any virus … that induces or is capable of inducing physical distress, illness or disease." ECF No. 10-1, Ex. 1. at 102. Plaintiffs argue the Virus Exclusion is subject to conflicting interpretations, and thus issues of fact preclude dismissal. *See* ECF No. 15-1 at 17–19. As the Policy does not define the term "virus," Plaintiffs argue it cannot be read to contemplate the loss or damage caused by a pandemic as opposed to "an ordinary virus," and thus does not bar coverage. *Id*. We find the language to be unambiguous.  It applies to COVID-19, which is caused by a coronavirus that causes physical illness and distress. *See Brian Handel D.M.D.*, 2020 WL 6545893, at *4 (similar virus exclusion barred coverage). The Virus Exclusion clearly states that it "applies to all coverage under all forms and endorsements [ ], including … forms or endorsements that cover business income, extra expense or action of civil authority." ECF No. 10-1, Ex. 1. at 102. No ambiguity exists to permit a conflicting interpretation.

### IV.   LEAVE TO AMEND

We are to freely give plaintiffs leave to amend their complaints where justice so requires. Fed. R. Civ. P. 15(a)(2). But where leave to amend would be futile, denial of leave to amend is appropriate. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007). Plaintiffs have already amended their complaint once in response to Harford's first motion to dismiss. *See* ECF No. 10. By amending their complaint with the benefit of Harford's initial motion to dismiss, Plaintiffs had the opportunity to proffer their best possible pleading. We will not give Plaintiffs leave to amend their amended complaint, as further amendment would unnecessarily delay the progression of this case. We can conceive of no facts Plaintiffs could allege under the circumstances of this case that would bring their losses within the Policy's grant of coverage.

**V.      Conclusion**

Because the Policy does not cover Plaintiffs' losses, we will grant Defendant's Motion to Dismiss. An appropriate Order will follow.

11